**Nos. 24-5493 and 24-5691**
_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

In re NFL Sunday Ticket Antitrust Litigation
(C.D. Cal. No. 2:15-ml-02668-PSG-SK)
_____

**BRIEF OF EVIDENCE AND CIVIL PROCEDURE SCHOLARS
AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**
_____

On Appeal from the United States District Court
for the Central District of California
Hon. Philip S. Gutierrez

_____

Matthew Duncan
mduncan@finekaplan.com
Rachel Sommer
rsommer@finekaplan.com
FINE KAPLAN & BLACK, R.P.C.
One South Broad Street, Ste. 2300
Philadelphia, PA 19107
Phone: (215) 567-6565

*Counsel for Amici Curiae*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici curiae* state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## **TABLE OF CONTENTS**

INTEREST AND IDENTITY OF *AMICI CURIAE*...................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

ARGUMENT ......................................................................................................6

I.    *DAUBERT* DOES NOT SUPPLANT RULE 50'S DEFERENTIAL STANDARD OF POST-TRIAL REVIEW....................................................6

    A.    The District Court's Analysis Improperly Circumvented Ordinary Rule 50 Review .....................................................................7

        1)  The District Court Re-Examined Factual Issues Resolved by the Jury .................................................................................8

        2)  The District Court Failed to Consider the Trial Record as a Whole and Draw all Reasonable Inferences in Favor of the Non-Moving Party ..............................................................11

        3)  The District Court Gave Insufficient Attention to Governing Substantive Standards ..................................................13

    B.    Caselaw Counsels Against the District Court's Approach ................14

II.    DISTRICT COURTS HAVE WAYS TO ADDRESS UNRELIABLE EXPERT TESTIMONY WITHOUT USURPING THE JURY ..................16

III.    THIS COURT SHOULD ANNOUNCE A CLEAR STANDARD OF REVIEW FOR RULE 50 MOTIONS RAISING *DAUBERT* ISSUES.........19

CONCLUSION ..................................................................................................20

ii

# TABLE OF AUTHORITIES

## CASES

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)............................................................6

*Byrd v. Blue Ridge Rural Elec. Coop., Inc.*,
356 U.S. 525 (1958).........................................................4

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962).........................................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).........................................................5

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ........................................14, 15

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997).........................................................16, 17

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) ..........................................8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195, 1221 (9th Cir. 1997) ................................13

*In re Joint E. & S. Dist. Asbestos Litig.*,
52 F.3d 1124 (2d Cir. 1995) ............................................15

*In re NFL Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) .........................................9

*In re NFL Sunday Ticket Antitrust Litig.*, No. ML 15-02668 (PSG),
2024 WL 3628118 (C.D. Cal. Aug. 1, 2024). .............................passim

*Old Chief v. United States*, 519 U.S. 172 (1997).........................17

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) .........................................13

*Perkins v. Standard Oil. Co. of Cal.*,
395 U.S. 642 (1969) .......................................................9

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)............................................................................2, 6, 11

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931).....................................................................................13

*Teradata Corp. v. SAP SE*, No. 23-16065,
2024 WL 5163082 (9th Cir. Dec. 19, 2024).................................14, 15

*United States v. J-M Mfg. Co., Inc.*, No. EDCV 06-55-GW-PJWx,
2020 WL 4196880 (C.D. Cal. June 5, 2020)........................................8

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000).....................................................................................17

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395
U.S. 100 (1969)..............................................................................................9

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 2072 .............................................................................................14

Fed. R. Civ. P. 50. ...................................................................................passim

Fed. R. Civ. P. 56 ...............................................................................................5

Fed. R. Evid. 104 ...............................................................................1, 4, 14

Fed. R. Evid. 702 ....................................................................................passim

## INTEREST AND IDENTITY OF *AMICI CURIAE*[1]

*Amici* are law professors who teach and write about evidence law and/or civil procedure. *Amici* respectfully offer the Court their professional academic perspective on the interaction between: (i) admissibility of evidence under Fed. R. Ev. 702 and Fed. R. Ev. 104(a), (ii) the deference due to juries under Fed. R. Civ. P. 50 and the Seventh Amendment, and (iii) the role played by substantive antitrust law's allocation of some questions related to expert opinions to the jury.

Each of the individuals listed below joins this brief as an *amicus curiae*. Institutional affiliations are for identification only; *amici* make no representations on behalf of their employers with respect to this case.

> **Jonah B. Gelbach** is the Herman F. Selvin Professor of Law at the UC Berkeley School of Law.
>
> **Sean Farhang** is the Elizabeth Josselyn Boalt Professor of Law at UC Berkeley School of Law.
>
> **David Levine** is The Honorable Raymond L. Sullivan Professor of Law at UC Law San Francisco.
>
> **David Rudovsky** is Senior Fellow at the University of Pennsylvania Carey Law School.
>
> **Rebecca Wexler** is the Hoessel-Armstrong Professor of Law at the UC Berkeley School of Law.

---

[1] No counsel for a party authored this brief in whole or in part and no person other than *amici* or their counsel made a monetary contribution to the brief's preparation or submission. All parties consent to this filing.

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

The unique procedural posture of this case calls for close attention to the Rule 50 standard of review. After denying defendants' pre-trial *Daubert* motions at the class certification and *in limine* stages, the district court oversaw a three-week trial during which the parties litigated all contested issues—including the expert issues—exhaustively on the merits. The jury returned a verdict for the plaintiffs, finding class-wide injury and damages. But the court granted defendants' Rule 50 motion for judgment as a matter of law on the grounds that two of plaintiffs' experts, in the court's view, offered unreliable and thus inadmissible testimony under *Daubert*. After excluding that testimony, the court held that "plaintiffs failed to provide evidence from which a reasonable jury could make a finding of injury and an award of actual damages." *In re NFL "Sunday Ticket" Antitrust Litig.*, No. ML 15-02668 (PSG), 2024 WL 3628118, *8 (C.D. Cal. Aug. 1, 2024).

This case presents the question of whether Rule 50's ordinary deference to the jury, see *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), is somehow vitiated by the presence of district court doubts about the reliability—and thus the admissibility—of expert testimony. The answer is important for this case, but this case is just the tip of the iceberg. If this Court approves the district court's approach, that same two-step end run around Rule 50 could be replicated in future cases, including outside the expert-testimony context. To avoid undermining

2

the traditional deference shown to the jury with respect to sufficiency, *amici* respectfully submit that this Court should endorse the following standard for admissibility review at the Rule 50 stage:

> When conducting Rule 50 review, courts may not disregard trial evidence on grounds of inadmissibility if the conclusion of inadmissibility requires a court to make credibility assessments about trial testimony, weigh trial evidence against other trial evidence, consider only part of the record, resolve disputed factual issues, or otherwise act contrary to the ordinary standards of Rule 50 review.

In this case, the trial court addressed defendants' Rule 50(b) motion in two steps. The court first performed "a post-trial *Daubert* analysis," finding inadmissible the same methodologies and opinions it had previously approved in pre-trial *Daubert* rulings. 2024 WL 3628118, at **3-8, Second, the court held that without the expert testimony, no reasonable jury could have reached a verdict for plaintiffs.

The court's post-trial *Daubert* analysis did not comport with Rule 50 standards. In retroactively excluding plaintiffs' experts, the court ignored the fact-bound and actually-litigated nature of the underlying expert issues, failed to engage with independent trial evidence that supported the experts' opinions, and disregarded the experts' testimony in the sufficiency review that followed. None of that is permitted under Rule 50's post-trial standard of review.

3

The problem here was not that the court reconsidered the admissibility of the evidence in light of the trial record. Nothing in Rule 702 or Rule 104(a) suggests any categorical infirmity with such reconsideration when a trial reveals that, under any objective assessment, admitted evidence really is inadmissible. The problem, instead, was the district court's refusal to extend any deference to the jury on factual issues central to the court's post-trial analysis. By invoking *Daubert*, the court performed an end run on traditional sufficiency review.

*Daubert* neither supersedes Rule 50 nor licenses that maneuver. This is true when a district court reviews the record on a Rule 50(a) motion before the jury gets the case. And, under the influence—if not the command—of the Seventh Amendment, it holds with even greater force post-verdict.[2]

Allowing district courts to make credibility assessments and weigh the evidence through post-trial admissibility analysis would open a gaping loophole in the deference due to the jury under Rule 50. The implications extend well beyond this case. Although the issue is posed here with respect to expert testimony, the problem can arise in other contexts. Rule 104(a)'s preponderance of the evidence standard governs many pre-trial evidentiary issues beyond the admissibility of

---

[2] *Cf. Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537 (1958) ("An essential characteristic of [the federal court] system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury.").

expert testimony, and it is not unusual for trial developments to spark district court doubts about fact-bound *in limine* rulings. But when those doubts flow from the trial court's assessment of credibility or evidentiary weight, Rule 50 insists on deference to the jury's reasonable-but-contrary views. If this Court approves the two-step procedure used here, courts could use the same post-trial procedure to retroactively exclude a range of evidence that, even though credited by the jury, the trial judge found unconvincing. Neither Rule 50 nor *Daubert* allows that approach.

None of this diminishes a district court's ability to prevent unreasonable jury verdicts under the influence of unreliable expert testimony. In addition to initial pre-trial Rule 702 analysis, and the traditional trial and procedural tools described in *Daubert*,[3] district courts can respond when facts or circumstances change. When the district court becomes convinced that it erred in allowing expert testimony, it may strike that testimony before the Rule 50 stage. And even at the Rule 50 stage, the district court can disregard evidence—including expert testimony—when the court concludes that no reasonable juror could rely on it, provided the court

---

[3] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, Fed. Rule Civ. Proc. 50(a), and likewise to grant summary judgment, Fed. Rule Civ. Proc. 56." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

reaches that conclusion without having to make credibility judgments or engage in evidence-weighing that Rule 50 prohibits.

This Court should vacate the district court's post-trial *Daubert* opinion and order, reverse the order granting judgment as a matter of law, and clarify that ordinary Rule 50 standards govern post-trial Rule 50 motions raising embedded *Daubert* issues.

## ARGUMENT

## I. *DAUBERT* DOES NOT SUPPLANT RULE 50'S DEFERENTIAL STANDARD OF POST-TRIAL REVIEW.

Under Rule 50 and Seventh Amendment standards, courts cannot re-examine a jury's factual findings, make "credibility determinations," or "weigh the evidence." *Reeves*, 530 U.S. at 150. Instead, courts must review the lawfully admitted evidence deferentially, looking at the trial record as a whole and "draw[ing] all reasonable inferences in favor of the nonmoving party." *Id.* If that review leads to just one reasonable conclusion, Rule 50 requires judgment as a matter of law. But if a reasonable jury could have reached its verdict on the admissible trial record, the verdict must stand.

This settled Rule 50 framework gives district court courts ample authority to reject fundamentally unreliable expert testimony. *See Daubert*, 509 U.S. at 596; *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242-43 (1993). For example, suppose events at trial reveal that expert testimony was

6

completely lacking in foundation because the expert admitted to falsifying essential data. No reasonable jury would put any weight on such an opinion, so Rule 50 review itself would require disregarding the testimony that advanced it. That traditional sufficiency analysis is how post-trial review is supposed to work.

### A. The District Court's Analysis Improperly Circumvented Ordinary Rule 50 Review.

The district court followed an unconventional two-step approach in reviewing the evidence under Rule 50. In step one, the court undertook a *de novo* post-trial *Daubert* analysis that, in substance, ignored the jury's resolution of underlying fact-bound issues. After conducting that blinkered analysis, the court found the experts' testimony unreliable and thus inadmissible. Then, at step two, the court pivoted to more conventional Rule 50 analysis, concluding that without the now-excluded expert testimony no reasonable jury could have reached a verdict in plaintiffs' favor.[4]

The problem here lies in step one, where the district court used tools of evidentiary review that violated Rule 50 standards. The district court essentially—

---

[4] *Amici* take no position on the issue but note that plaintiffs argue forcefully that the trial court's step two determination involved its own errors as a matter of substantive antitrust law and the factual record at trial.

7

and improperly—used the *Daubert* label to circumvent deference to jury factfinding on the underlying battle-of-the-experts disputes.[5]

### 1) The District Court Re-Examined Factual Issues Resolved by the Jury.

The district court clearly soured on the experts' opinions sometime between its *in limine* ruling and its trial comment that it "didn't think much of" testimony from either Professor Rascher or Dr. Zona. 6/18/24 Tr. (Dkt. 1524) 1623:3-8. But the court cited no change in either expert's methodology between the pre-trial

---

[5] The district court provided thin support for its practice, citing to a single district court opinion, *United States v. J-M Mfg. Co., Inc.*, No. EDCV 06-55-GW-PJWx, 2020 WL 4196880 (C.D. Cal. June 5, 2020). Like the order at issue here, the court's post-trial order in *J-M* resolved a defendant's motion for judgment as a matter of law, *id*. at *1, and indicated that the court would strike admitted expert testimony on the basis of its post-trial *Daubert* analysis. But the similarities end there. *J-M* was a False Claims Act case in which the district court bifurcated liability and damages. *Id*. at **1-2. After a trial and years of post-trial litigation on phase one issues, phase two ended in a mistrial when the jury deadlocked on damages. *Id*. As a result, there was no damages verdict owed any deference in the court's post-trial *Daubert*/Rule 50 analysis. Additionally, the court was careful to cabin and qualify its *Daubert* determinations in ways that avoided re-examination of jury factfinding: the court stated that it would strike expert testimony only with respect to the damages trial, leaving undisturbed the liability verdict and whatever role expert testimony played in it. *Id*. at *12. Moreover, the court's *Daubert* holding was just one of four distinct and apparently sufficient grounds the court identified in ruling that no reasonable jury could find the plaintiffs had proved damages. *Id*.

This Court affirmed in *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164 (9th Cir. 2023) but did not address the propriety of (or standards for) post-trial *Daubert* analysis. *Id*. at 1176 (noting that plaintiffs did not raise the *Daubert* issue on appeal). This Court thus had no occasion to review the appropriateness of the *J-M* court's approach.

*Daubert* ruling and trial. Rather, the court seized on a specific, deeply fact-bound merits issue: the nature of the but-for world absent the antitrust violation. The nature of the but-for world plays a critical role in establishing antitrust injury and quantifying damages; determining each of these requires comparing pricing and output in the actual world that featured unlawful restraints on trade to the world that would have existed absent these unlawful restraints.[6]

This classic cause-in-fact question was hotly and centrally disputed at trial. The parties litigated it exhaustively, presenting voluminous evidence—expert and otherwise—on both sides of the issue. For example, plaintiffs' expert, Professor Rascher, testified at length about the rationale for his opinion that NCAA football provided an apt comparison for what NFL broadcasting might have looked like in the but-for world. 6/11/24 Tr. (Dkt. 1520) 749:10-768:23 (direct), 779:7-23 (direct), 808:1-827:22 (cross), 841:2-848:2 (cross), 856:17-859:17 (cross), 872:6-891:10 (cross), 899:24-910:23 (cross); 6/12/24 Tr. (Dkt. 1521) 951:20-956:34

---

[6] *See, e.g., Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 123-24 (1969) (explaining that plaintiffs are permitted to establish antitrust injury based on reasonable inferences from circumstantial proof because antitrust violations distort the market and make the but-for world difficult to establish with certainty); *Perkins v. Standard Oil. Co. of Cal.*, 395 U.S. 642, 648 (1969) (emphasizing jury's role as factfinder on disputed questions of antitrust injury, causation, and damages); *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (explaining that antitrust injury requires fact-bound consideration of the trial record as a whole); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152 (9th Cir. 2019) (same).

(cross), 959:13-964:1 (redirect). Plaintiffs' other expert, Dr. Zona, likewise explained his econometric but-for models and the foundation for his opinions. 6/13/24 Tr. (Dkt. 1522) 1172:10-1192:24 (direct), 1192:22-1272:20 (cross), 1272:21-1282:122 (redirect and recross).

Defendants introduced evidence attacking these analyses. For example, the NFL introduced opinion testimony from its own expert economist, Professor Bernheim, to rebut Rascher's analysis, including the college football comparison. 6/20/24 Tr. (Dkt. 1525) 1933:5-1950:14 (direct), 2002:3-2013:4 (cross). The NFL also introduced opinion testimony from a second expert, Professor Yurukoglu, to critique Zona's models. 6/13/24 Tr. (Dkt. 1522) 1311:14-1362:6 (direct), 1362:8-1376:7 (cross); 6/17/24 Tr. (Dkt. 1523) 1392:11-1440:7 (cross and redirect). Fact witnesses addressed the college football comparison as well. *E.g.*, 6/18/24 Tr. (Dkt. 1524) 1709:20-1712:10 (former head of CBS Sports).

*Amici* take no position on the merits of these disputes. But the record highlights two basic points: (1) the fundamentally fact-bound nature of the underlying expert disputes and (2) the extent to which the issues were litigated fully and fairly at trial. Given that reality, the district court's post-verdict *Daubert* decision raises serious re-examination concerns. *See also* Fed. R. Evid. 702 advisory committee note to 2000 amendment (trial court cannot exclude an expert because the "court believes one version of the facts and not the other").

### 2) The District Court Failed to Consider the Trial Record as a Whole and Draw All Reasonable Inferences in Favor of the Non-Moving Party.

Because a jury is allowed to draw all reasonable inferences about trial evidence in the light most favorable to a party, based on the trial record as a whole, a court undertaking Rule 50 review cannot reject individual items of trial evidence by reviewing them in isolation. That is true in general, *Reeves*, 530 U.S. at 150, and as a matter of substantive antitrust law, *Cont'l Ore*, 370 U.S. at 698-99. Yet in its step one analysis, the district court engaged in this forbidden practice, ignoring evidence in the trial record that supported the testimony by Professor Rascher and Dr. Zona about their proposed but-for worlds.

For example, Rascher based his opinion, in part, on an internal NFL study (the so-called "New Frontier" report) that, according to Rascher's testimony, expressly used NCAA football as a comparison for what NFL broadcasting might look like but-for the challenged restraints. 6/11/24 Tr. (Dkt. 1520) 757:23-768:23. If Rascher's testimony about the New Frontier study represents a plausible reading of the document (which remains under seal), it is hard to imagine how the trial court could wave away that independent evidence under proper Rule 50 standards of review. *Cf.* 2024 WL 3628118, at *6 (providing only cursory analysis before

11

rejecting New Frontier study as insufficiently reliable foundation for Rascher's NCAA comparison).[7]

The district court made the same mistake with respect to Dr. Zona. For example, the court rejected Zona's "single competitor model" because, in the court's view, a live streaming competitor was not "feasible" during the class period. 2024 WL 3628118, at *7. But other trial evidence, including testimony from the NFL's own expert, indicated that live streaming options were not just feasible but actually existed during the class period. 6/13/24 Tr. (Dkt. 1522) 1368:9-1372:4 (expert testimony); 6/18/24 Tr. (Dkt. 1524) 1781:9-1784:8 (testimony from NFL's vice president of broadcasting about streaming availability in 2012), 1798:12-18 (same). The district court made no effort to address that independent proof on a quintessentially fact-bound issue or explain why a reasonable jury could not believe it.

In each of these respects, the district court supplanted proper post-trial Rule 50 analysis with a blinkered *de novo Daubert* analysis.

---

[7] Rascher's demonstratives appear on the public docket and include excerpts of the New Frontier report. Dkt. 1533-3, at 68-72. Based on those excerpts, it appears the NFL used NCAA football as an express comparison for a world without the challenged restraints. Could a reasonable jury view the New Frontier study as independent support for both Rascher's opinions and the ultimate verdict? The district court did not ask, let alone evaluate, those types of questions in its step one analysis.

### 3) The District Court Gave Insufficient Attention to Governing Substantive Standards.

The court's approach also flouted relevant standards of substantive antitrust law, further highlighting the risks of allowing post-trial admissibility analysis to replace ordinary Rule 50 review. For example, the court's post-trial *Daubert* analysis ignored long-settled authority that allows antitrust plaintiffs to establish injury, causation, and damages based on reasonable inferences from circumstantial proof drawn from the trial record as a whole.[8] The court also ignored the general rule that "[c]ausation is an intensely factual question that should typically be resolved by a jury." *Pac. Shores Props., LLC v. City of Newport Bea*ch, 730 F.3d 1142, 1168-69 (9th Cir. 2013) (relying on seminal antitrust authority for this proposition). The court instead used its *Daubert* analysis to impose a heightened burden of proof on plaintiffs and their experts. *See* 2024 WL 3628118, at \*7 (suggesting that expert's but-for world required "conclusive" proof to be admissible).

---

[8] *See* note 6, *supra* (collecting cases); *see also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1221 (9th Cir. 1997).

Nothing in the Rules of Evidence authorized that approach. While it is true that courts often resolve admissibility issues that touch on the merits under Rule 104(a), they must do so in a manner consistent with underlying substantive standards.[9] Substantive antitrust law flows both from statutory law and caselaw. Where controlling antitrust precedent has established that a particular substantive issue—such as causation, injury, or damages—poses a fact-bound question for the jury to resolve based on reasonable inferences from the record as a whole, a trial court's evidentiary rulings must comport with that standard.[10] The district court's step one analysis fell short in this respect as well.

### B. Caselaw Counsels Against the District Court's Approach.

Extensive *Daubert* authority calls the district court's analysis into question even on its own terms under Rule 702. *See, e.g.*, *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022) ("Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to

---

[9] The Federal Rules of Evidence were originally enacted directly by Congress, but amendments have proceeded through the rulemaking process. The general prohibition on rules that "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072, therefore has force with respect to the evidence rules, especially with respect to those that have been amended through rulemaking, as with Rule 702.

[10] This Court recently reversed a district court's exclusion of expert testimony in part because the trial court's *Daubert* analysis committed legal error with respect to substantive antitrust law. *See Teradata Corp. v. SAP SE*, No. 23-16065, 2024 WL 5163082, at *5 (9th Cir. Dec. 19, 2024).

14

determine the veracity of the expert's conclusions . . . . The court's role is to determine 'the scientific validity' of an expert's 'principles and methodology,' not to determine whether their hypothesis is correct, or to evaluate whether it is corroborated by other evidence on the record."). Consistent with *Daubert* itself, cases such as *Elosu* stand for the proposition that juries are expected to resolve most expert disputes, particularly on fact-bound issues. *See also* Fed. R. Evid. 702, advisory committee note to 2000 amendment. Thus, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Teradata*, 2024 WL 5163082, at *5 (citation omitted).

That, of course, is textbook *Daubert* law. But the novel post-trial posture of this case—and the interaction between *Daubert*, Rule 50, and actual jury factfinding—makes it all the more important that trial courts avoid "impermissibly cross[ing] the line from assessing evidentiary reliability to usurping the role of the jury." *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1131 (2d Cir. 1995) (Cabranes, J.). The Second Circuit's *Asbestos* decision is instructive. In *Asbestos*, as here, the district court effectively conducted a *de novo* post-trial *Daubert* analysis to reject the plaintiff's expert's opinions and, in turn, enter judgment as a matter of law. *Id*. at 1126.

The Second Circuit reversed and reinstated the verdict, emphasizing that the district court erred by "ma[king] a number of independent scientific conclusions—without granting plaintiff the requisite favorable inferences—in a manner not authorized by *Daubert*." *Id.* at 1137. Cataloging a litany of examples from the court's post-trial analysis, the court of appeals chastised the district court for impermissibly weighing the evidence, disregarding evidence favorable to the excluded expert's opinion, "passing on the credibility of the witnesses," and generally "substituting its judgment for that of the jury." *Id.* at 1133 (cleaned up). The Second Circuit emphasized in no uncertain terms that, in the post-trial setting, "*Daubert* left the traditional sufficiency standard intact." *Id.* at 1132. The Court should follow suit here.

## II. DISTRICT COURTS HAVE WAYS TO ADDRESS UNRELIABLE EXPERT TESTIMONY WITHOUT USURPING THE JURY.

None of this leaves district courts unable to respond appropriately if trial reveals previously unknown facts or circumstances that properly would induce a district court to change its view of the admissibility of expert opinion testimony. Standard practice, and the rules of evidence, provide ample room for a district court to make appropriate adjustments without violating Rule 50.

First, pre-trial motion *in limine* gatekeeping remains the primary means of keeping junk science out of the courtroom. District courts enjoy evidentiary discretion at that stage, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997), backstopped

by appellate review conducted "in light of the facts and circumstances before the trial court at the time of the ruling," Fed. R. Evid. 103, advisory committee note to 2000 amendment; *see also Old Chief v. United States*, 519 U.S. 172, 182 n.6 (1997) ("It is important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight."). Moreover, in reviewing pre-trial *Daubert* orders, appellate courts are permitted to direct the entry of judgment if the verdict rests on improperly admitted expert testimony. *Weisgram v. Marley Co.*, 528 U.S. 440 (2000).[11]

Second, if facts or circumstances related to the *in limine* ruling change materially at trial, the court has the ability to revisit its *Daubert* ruling. For example, suppose a district court ruled *in limine* that an epidemiology expert could offer opinions based on a single peer-reviewed study. Then suppose that, at trial, the expert admitted the study recently had been retracted by its authors. On these facts, the court could alert the parties that it is considering reversing its earlier *in*

---

[11] The district court cited the Supreme Court's *Weisgram* decision at the outset of its post-trial *Daubert* analysis, 2024 WL 3628118, at *3, but *Weisgram* did not authorize the court's novel approach to the post-trial standard of review. *Weisgram* concerned an appellate court's power to direct the entry of judgment after concluding, based on ordinary appellate review, that a jury verdict rested on inadmissible testimony. *Weisgram* did not involve a district court's use of the two-step procedure at issue here, so the Court had no occasion to address whether Rule 50's deferential post-trial standards may be circumvented simply by invoking *Daubert*.

17

*limine* ruling. After speedy briefing, it would rule appropriately given the totality of circumstances before the matter goes to the jury.

Third, the opponent of the expert testimony could object to the evidence at trial based on changed facts and circumstances, allowing the court to address the issue before the close of evidence. *See* Fed. R. Evid. 103, advisory committee note to 2000 amendment (explaining that changed facts and circumstances "cannot be relied upon on appeal unless they have been brought to the attention of the trial court by way of a renewed, and timely, objection"). And even if the party failed to lodge such an objection at trial, Rule 50 would remain available post-trial to set aside a verdict that, after appropriately deferential review, could not stand as a matter of law. *See Daubert*, 509 U.S. at 596.

Thus, when trial events convince the district court that an expert's opinion is not reliable by a preponderance of the evidence, the court has procedures available to exclude the testimony. Whether the court refused to admit the testimony in the first place or struck it mid-trial, the court would reach the same result: an admissibility ruling *before* the case goes to the jury, subject to abuse of discretion review on appeal. And Rule 50 remains available post-trial, provided the court performs its analysis with strict attention to ordinary Rule 50 standards of review.

18

### III. THIS COURT SHOULD ANNOUNCE A CLEAR STANDARD OF REVIEW FOR POST-TRIAL RULE 50 MOTIONS RAISING *DAUBERT* ISSUES.

In light of the foregoing, *amici* respectfully suggest that this Court should clarify that:

> When conducting Rule 50 review, courts may not disregard trial evidence on grounds of inadmissibility if the conclusion of inadmissibility requires a court to make credibility assessments about trial testimony, weigh trial evidence against other trial evidence, consider only part of the record, resolve disputed factual issues, or otherwise act contrary to the ordinary standards of Rule 50 review.

That standard will prevent district courts from unduly usurping the jury by making clear that, post-trial, *Daubert* does not supplant ordinary Rule 50 review. A decision to that effect will not only bring necessary clarity to an underdeveloped area of law; it will also give full force to the core *Daubert*, Rule 50, and Seventh Amendment interests at stake.

This Court has the opportunity to correct a district court's significant mistake in the present case and to set forth a clear standard going forward. *Amici* respectfully encourage the Court to do so.

## **<u>CONCLUSION</u>**

The district court's post-trial order should be reversed.


Dated:  January 16, 2025                    Respectfully submitted,

<div style="margin-left: 40%;">

*/s/ Matthew Duncan*
Matthew Duncan
mduncan@finekaplan.com
Rachel Sommer
rsommer@finekaplan.com
FINE KAPLAN & BLACK, R.P.C.
One South Broad Street, Ste. 2300
Philadelphia, PA 19107
Tel: (215) 567-6565

*Counsel for Amici Curiae*

</div>

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-5493 and 24-5691

I am the attorney or self-represented party.

**This brief contains** | 4,697 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Matthew Duncan | **Date** | 1/16/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/22*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 16, 2025, the foregoing was served upon counsel of record in this Appeal via ECF.

/s/ Matthew Duncan
Matthew Duncan