No. 24-5493 & 24-5691

# In the United States Court of Appeals for the Ninth Circuit

_____

IN RE NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET"
ANTITRUST LITIGATION

_____

NINTH INNING, INC., ET AL.,
PLAINTIFFS-APPELLANTS

_v._

NATIONAL FOOTBALL LEAGUE, INC., ET AL.,
DEFENDANTS-APPELLEES

_____

_ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA (MDL NO. 2668)
(HON. PHILIP S. GUTIERREZ, J.)_

_____

**BRIEF OF AMICI CURIAE FORMER ANTITRUST ENFORCERS
IN SUPPORT OF APPELLEES**

_____

DANIEL A. CRANE
LOUIS A. MURRAY
KATHLEEN H. PIERRE
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
_1285 Avenue of the Americas
New York, NY 10019_

KANNON K. SHANMUGAM
WILLIAM T. MARKS
MADELINE M. MCMAHON
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
_2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300
kshanmugam@paulweiss.com_

# TABLE OF CONTENTS

Page

Interest of amici curiae ................................................................1

Argument ........................................................................................2

    A.   Proof of an injury is necessary to obtain prospective
        injunctive relief under Section 16 of the Clayton Act ....................3

    B.   An antitrust plaintiff's failure to prove past injury
        may preclude prospective injunctive relief under
        Section 16 of the Clayton Act ............................................................9

    C.   Allowing private plaintiffs to obtain prospective injunctive
        relief without proof of injury would interfere with
        public antitrust enforcement ..........................................................12

Conclusion ..........................................................................................17

# TABLE OF AUTHORITIES

## CASES

*American Passage Media Corp.* v. *Cass Communications, Inc.*,
   750 F.2d 1470 (9th Cir. 1985) ..............................................................5

*American Tobacco Co.* v. *United States*, 328 U.S. 781 (1946) ............................7

*Ashley Meadows Farm, Inc.* v. *American Horse Shows
   Association, Inc.*, 617 F. Supp. 1058 (S.D.N.Y. 1985) ..................................11

*Bearden* v. *Ballad Health*, 967 F.3d 513 (6th Cir. 2020) ....................................6

*Broadcast Music, Inc.* v. *Columbia Broadcasting System, Inc.*,
   441 U.S. 1 (1979) ..........................................................................13

*California* v. *American Stores Co.*, 495 U.S. 271 (1990) ..........................3, 8, 12

*Cargill, Inc.* v. *Monfort of Colorado, Inc.*, 479 U.S. 104 (1986) ........................4

*Cash & Henderson Drugs, Inc.* v. *Johnson & Johnson*,
   799 F.3d 202 (2d Cir. 2015) ..................................................9, 10, 12

Page

Cases—continued:

*City of Los Angeles* v. *Lyons*, 461 U.S. 95 (1983).................................................6

*City of Oakland* v. *Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021) .................5

*Clapper* v. *Amnesty International USA*, 568 U.S. 398 (2013) .........................6

*Drug Mart Pharmacy Corp.* v. *American Home Products Corp.*,
  Civ. No. 93-5148, 2007 WL 4526618 (E.D.N.Y. Dec. 20, 2007) ....................11

*eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388 (2006) ..................................5

*Flaa* v. *Hollywood Foreign Press Association*,
  55 F.4th 680 (9th Cir. 2022) ........................................................................8

*FTC* v. *University Health, Inc.*, 938 F.2d 1206 (11th Cir. 1991)......................12

*Galvez* v. *Jaddou*, 52 F.4th 821 (9th Cir. 2022).........................................5

*Gerlinger* v. *Amazon.com Inc.*, 526 F.3d 1253 (9th Cir. 2008) .........................5

*Heckler* v. *Chaney*, 470 U.S. 821 (1985)................................................16

*Howard Hess Dental Laboratories Inc.* v. *Dentsply International, Inc.*,
  602 F.3d 237 (3d Cir. 2010) ........................................................................8

*Intergraph Corp.* v. *Intel Corp.*, 195 F.3d 1346 (Fed. Cir. 1999)......................14

*Los Angeles Coliseum Commission* v. *NFL*,
  634 F.2d 1197 (9th Cir. 1980).......................................................................4

*Machovec* v. *Council for National Register of Health Service
  Providers in Psychology, Inc.*, 616 F. Supp. 258 (E.D. Va. 1985) ...............9

*Merit Motors, Inc.* v. *Chrysler Corp.*, 569 F.2d 666 (D.C. Cir. 1977) .............11

*Microsoft Corp. Antitrust Litigation, In re*, 333 F.3d 517 (4th Cir. 2003).....14

*NFL's Sunday Ticket Antitrust Litigation, In re*,
  933 F.3d 1136 (9th Cir. 2019)........................................................................16

Page

Cases—continued:

*Ohio* v. *American Express Co.*, 585 U.S. 529 (2018)............................................7

*Rebel Oil Co.* v. *Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995)...............8

*Reveal Chat HoldCo LLC* v. *Meta Platforms, Inc.*,
    No. 21-15863, 2022 WL 595696 (9th Cir. Feb. 28, 2022)................................6

*State Oil Co.* v. *Khan*, 522 U.S. 3 (1997)................................................7

*Static Control Components* v. *Lexmark International, Inc.*,
    697 F.3d 387 (6th Cir. 2012), *aff'd*, 572 U.S. 118 (2014)................................9

*Steves & Sons, Inc.* v. *JELD-WEN, Inc.*, 988 F.3d 690 (4th Cir. 2021) ...........5

*United States* v. *Borden Co.*, 347 U.S. 514 (1954) .....................................3, 4, 12

*United States* v. *Microsoft, Inc.*, 253 F.3d 34 (D.C. Cir. 2001)........................14

*Valley Products Co.* v. *Landmark*, 128 F.3d 398 (6th Cir. 1997) ......................8

*Van Dyk Research Corp.* v. *Xerox Corp.*, 631 F.2d 251 (3d Cir. 1980)..............9

*ZF Meritor, LLC* v. *Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012)...........................8

## CONSTITUTION AND STATUTES

U.S. Const. Art. III.......................................................................................2, 5, 6

Clayton Antitrust Act, 15 U.S.C. §§ 12-27:

    15 U.S.C. § 16(b) ...............................................................................15

    15 U.S.C. § 25 .....................................................................................3

    15 U.S.C. § 26 ..............................................................................*passim*

Sherman Antitrust Act, 15 U.S.C. §§ 1-7:

    15 U.S.C. § 1 ....................................................................................7, 8

Page

Statute—continued:

15 U.S.C. § 2 ...................................................................7, 8

# MISCELLANEOUS

88 Fed. Reg. 34,518 (May 30, 2023) .....................................15

Federal Trade Commission, Press Release: *FTC Settles Charges of Anticompetitive Conduct Against Intel* (Aug. 4, 2010) <tinyurl.com/ftcintel>...............................................15

*Report of the American Bar Association Section of Antitrust Law Special Committee to Study the Role of the Federal Trade Commission*, 58 Antitrust L.J. 43 (1990).......................................12

Sun Microsystems, Inc., *Comments to the Revised Proposed Final Judgment in 'United States' v. 'Microsoft Corporation,' No. 98-1232; 'State of New York, et al.' v. 'Microsoft Corporation,' No. 98-1233* (Jan. 28, 2002) <tinyurl.com/suntunneyact>..........................14

U.S. Reply to COMPTEL Opp. to Mot. for Entry of Judgment, *United States* v. *SBC Communications, Inc.*, Civ. No. 05-2102 (D.D.C.) <tinyurl.com/compteltunneyreply> ...............................15

U.S. Response to Public Comment on Proposed Final Judgment, *United States* v. *Cortland Management, LLC*, Civ. No. 24-710 (M.D.N.C.) <tinyurl.com/cortlandtunneyresponse> ...................................15

## INTEREST OF AMICI CURIAE*

Amici curiae are Alden F. Abbott, Makan Delrahim, and Daniel J. Gilman. Mr. Abbott was General Counsel of the Federal Trade Commission (FTC) from 2018 to 2021. Mr. Delrahim was the Assistant Attorney General in charge of the Antitrust Division of the United States Department of Justice from 2017 to 2021. Daniel J. Gilman was an Attorney-Advisor in the FTC's Office of Policy Planning from 2006 to 2022. Amici are filing in their private capacity as former antitrust enforcement officials, and they share a common interest in the vigorous enforcement of the federal antitrust laws.

As the Supreme Court has affirmed, the Department of Justice and the FTC are the primary bodies charged with protecting the public interest in competition. One important difference between government and private antitrust actions seeking injunctive relief is that the government can obtain relief without proving a threatened future injury, whereas private plaintiffs cannot obtain relief without making such a showing. Amici believe that this distinction is key to preserving the government's crucial role in serving the public interest. Amici thus have an interest in ensuring that the Court not allow the

---

* Pursuant to Federal Rule of Appellate Procedure 29(a)(2), amici are filing this brief without leave of court because the parties to this appeal have consented to its filing. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici certify that no party's counsel authored any part of this brief, and no person other than amici funded its preparation or submission.

(1)

private plaintiffs in this case to obtain prospective injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, without proving that defendants' conduct creates a genuine threat of future injury.

## ARGUMENT

In the decision below, the district court granted judgment to defendants National Football League, Inc., and the League's member clubs after it excluded the testimony of plaintiffs' experts offered to prove the existence of injury and damages. Because plaintiffs otherwise failed to prove injury and damages, the district court held that defendants had prevailed as a matter of law and that the jury's verdict in plaintiffs' favor should be vacated. The district court entered judgment not only on plaintiffs' claims for damages, but also on their claims for prospective injunctive relief. *See* 1-ER-20.

Amici curiae write to emphasize three crucial points about plaintiffs' ability to obtain prospective injunctive relief in this case. *First*, the Clayton Act and Article III of the Constitution require that, to obtain such relief, a private plaintiff must prove that the defendant's conduct threatens the plaintiff with impending future injury. *Second*, a private antitrust plaintiff who fails to prove past injury caused by the defendant's challenged practice usually cannot show that the continuation of that same practice threatens future injury. *Third*, allowing a private plaintiff to obtain injunctive relief without proving a genuine threat of future injury would effectively elevate the plaintiff to the

status of a public antitrust enforcer, upsetting the statutory scheme that Congress created and interfering with public policy and priorities for antitrust enforcement.

## A. Proof Of An Injury Is Necessary To Obtain Prospective Injunctive Relief Under Section 16 Of The Clayton Act

In order to obtain prospective injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, a private antitrust plaintiff must prove that the defendant's challenged practice threatens to injure the plaintiff. An important corollary of that requirement is that a private plaintiff cannot obtain an injunction under Section 16 merely by proving that the defendant engaged in anticompetitive conduct that violates the federal antitrust laws.

1. Under the federal antitrust laws, "the Attorney General and the United States district attorneys . . . are primarily charged by Congress with the duty of protecting the public interest." *United States* v. *Borden Co.*, 347 U.S. 514, 518 (1954). As the Supreme Court has explained, the federal government "seeks its injunctive remedies on behalf of the general public," while a private plaintiff "may be expected to [do so] only when his personal interest will be served." *Id.* Under the Clayton Act, the government has broad ability to "institute proceedings in equity to prevent and restrain" violations of the antitrust laws. 15 U.S.C. § 25. And in a government enforcement action, "the proof of the violation of law may itself establish sufficient public injury to warrant relief." *California* v. *American Stores Co.*, 495 U.S. 271, 295 (1990).

3

Private antitrust actions are different. Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against *threatened loss or damage* by a violation of the antitrust laws." 15 U.S.C. § 26 (emphasis added). A private plaintiff may thus "obtain injunctive relief against such violations only on a showing of 'threatened loss or damage'; and this must be of a sort personal to the plaintiff." *Borden*, 347 U.S. at 518 (citation omitted). As this Court has put it, Section 16 requires proof of a "significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Los Angeles Coliseum Commission* v. *NFL*, 634 F.2d 1197, 1201 (9th Cir. 1980) (citation omitted).

The threatened "loss or damage" for which a private plaintiff seeks prospective injunctive relief under Section 16 must also be of the same type cognizable under Section 4, which provides a private antitrust right of action for damages. *See Cargill, Inc.* v. *Monfort of Colorado, Inc.*, 479 U.S. 104, 112 (1986). In other words, the Clayton Act does not "authorize a private plaintiff to secure an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred." *Id.* A plaintiff seeking relief under Section 16 must accordingly prove the threat of an *antitrust*

injury—that is, an injury of "the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 113 (citation omitted).

Section 16 further states that prospective injunctive relief should be available to a private plaintiff only "when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity." 15 U.S.C. § 26. Courts thus apply "[t]raditional equitable criteria" when assessing whether to issue injunctive relief under Section 16. *American Passage Media Corp.* v. *Cass Communications, Inc.*, 750 F.2d 1470, 1472 (9th Cir. 1985). And under the traditional four-part test for permanent injunctive relief, a plaintiff must demonstrate, among other things, irreparable injury. *See eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). That requirement applies to Section 16, *see Steves & Sons, Inc.* v. *JELD-WEN, Inc.*, 988 F.3d 690, 719 (4th Cir. 2021), just as it does to other requests for permanent injunctive relief, *see, e.g., Galvez* v. *Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022).

In addition, although the statutory requirements under the Clayton Act are distinct from the standing requirement under Article III of the Constitution, a private plaintiff must satisfy both in order to obtain relief under Section 16. *See Gerlinger* v. *Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008); *accord City of Oakland* v. *Oakland Raiders*, 20 F.4th 441, 452-458 (9th Cir.

5

2021). That means a private plaintiff seeking relief under Section 16 must establish that the threat of future injury it asserts satisfies Article III. *See Bearden* v. *Ballad Health*, 967 F.3d 513, 516-518 (6th Cir. 2020).

For Article III purposes, a threat of future injury must be "certainly impending" for a party to obtain prospective injunctive relief. *Clapper* v. *Amnesty International USA*, 568 U.S. 398, 409 (2013). Injuries that are "too speculative" or unlikely to recur are thus insufficient to obtain a forward-looking injunction. *Id.* And "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 102 (1983) (citation omitted). This Court has applied those principles in the context of the Clayton Act, holding that injunctive relief under Section 16 was unavailable where the plaintiffs offered "no facts suggesting" the defendant's allegedly anticompetitive actions "threaten[ed] future harm to them." *Reveal Chat HoldCo LLC* v. *Meta Platforms, Inc.*, No. 21-15863, 2022 WL 595696, at *1 (Feb. 28, 2022). The requirement that a private plaintiff seeking prospective injunctive relief under Section 16 must prove threatened future injury thus has a constitutional basis as well as a statutory one.

2. A corollary of the injury requirement under Section 16 is that a private plaintiff cannot obtain prospective injunctive relief merely by showing that the challenged practice violates the antitrust laws.

6

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. As the Supreme Court has explained, that provision prohibits only restraints of trade that are "unreasonable." *See State Oil Co.* v. *Khan*, 522 U.S. 3, 10 (1997). The Sherman Act thus tasks courts with "distinguish[ing] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Ohio* v. *American Express Co.*, 585 U.S. 529, 541 (2018) (citation omitted).

Section 2 of the Sherman Act makes it a crime "[to] monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of" interstate or international commerce. 15 U.S.C. § 2. For purposes of that provision, "to monopolize" means "to combine or conspire to acquire or maintain the power to exclude competitors from any part of the trade or commerce among the several states or with foreign nations, provided they also have such a power that they are able, as a group, to exclude actual or potential competition from the field and provided that they have the intent and purpose to exercise that power." *American Tobacco Co.* v. *United States*, 328 U.S. 781, 809 (1946). Despite their apparent differences, "the legal tests used for [S]ections 1 and 2 of the Sherman Act are similar,"

allowing courts to "review claims under each section simultaneously." *Flaa* v. *Hollywood Foreign Press Association*, 55 F.4th 680, 688 (9th Cir. 2022).

As already explained, in a government antitrust enforcement action, "proof of the violation" of Section 1 or 2 of the Sherman Act "may itself establish sufficient public injury to warrant" a prospective injunction against the challenged practice. *American Stores*, 495 U.S. at 295. But as also explained, a private plaintiff must demonstrate a threatened future injury in order to obtain prospective injunctive relief. As a result, a private plaintiff in the same situation as plaintiffs here—having obtained a finding of anticompetitive conduct but having failed to prove injury—cannot obtain an injunction. *See, e.g.*, *ZF Meritor, LLC* v. *Eaton Corp.*, 696 F.3d 254, 300-303 (3d Cir. 2012); *Howard Hess Dental Laboratories Inc.* v. *Dentsply International, Inc.*, 602 F.3d 237, 247-251 (3d Cir. 2010). Indeed, even where a defendant has engaged in conduct treated as a per se violation of the Sherman Act, proof of that fact alone will not afford a private plaintiff relief. *See Valley Products Co.* v. *Landmark*, 128 F.3d 398, 402-403 (6th Cir. 1997); *Rebel Oil Co.* v. *Atlantic Richfield Co.*, 51 F.3d 1421, 1443-1444 (9th Cir. 1995).

Accordingly, the assertion that the jury below "found that [d]efendants' pooling agreements unreasonably restrained trade" and thus "harmed competition," U.S. Br. 21, 22, is not sufficient to support plaintiffs' request for pro-

spective injunctive relief under Section 16 of the Clayton Act. Instead, plaintiffs needed evidence to show that defendants' challenged conduct threatened them with future injury.

### B. An Antitrust Plaintiff's Failure To Prove Past Injury May Preclude Prospective Injunctive Relief Under Section 16 Of The Clayton Act

In numerous cases, courts have held that a private antitrust plaintiff's inability to demonstrate a past injury caused by the allegedly anticompetitive conduct may preclude the plaintiff from showing a threatened future injury based on the continuation of the same conduct. In such cases, the plaintiff's "inability to cite to any contemporaneous damages" prevents a court from drawing a "reasonable inference of future damages" based on the defendant's ongoing conduct. *Machovec* v. *Council for National Register of Health Service Providers in Psychology, Inc.*, 616 F. Supp. 258, 266-267 (E.D. Va. 1985); *see Static Control Components* v. *Lexmark International, Inc.*, 697 F.3d 387, 409 (6th Cir. 2012), *aff'd*, 572 U.S. 118 (2014); *Van Dyk Research Corp.* v. *Xerox Corp.*, 631 F.2d 251, 255 n.2, 256 (3d Cir. 1980).

Of particular relevance here, courts have been reticent to infer that future injury is likely to occur where the defendant has engaged in the alleged anticompetitive practice long enough for its effects to have become clear and the plaintiff nevertheless fails to prove past injury. For example, in *Cash & Henderson Drugs, Inc.* v. *Johnson & Johnson*, 799 F.3d 202 (2d Cir. 2015), a

group of retail pharmacies sued pharmaceutical manufacturers under the antitrust laws for offering lower prices on prescription drugs to certain purchasers—a practice the manufacturers had engaged in since the early 1990s. *See id.* at 206. The district court granted summary judgment to the defendants, concluding that the plaintiffs failed to present evidence that they had lost more than a *de minimis* number of customers because of the allegedly anticompetitive practice. *See id.* at 208-209.

The Second Circuit affirmed, including the district court's denial of injunctive relief. *See Cash & Henderson Drugs*, 799 F.3d at 214-215. As the court explained, "the lack of past injury may indicate that future injury is improbable." *Id.* at 215. That was the case on the facts before it, the Second Circuit concluded, given that the alleged anticompetitive practice had occurred "over an extended period of time," yet the plaintiffs had failed to prove that they had suffered any injury. *Id.* The plaintiffs also "offered no argument that future conditions [would] change in such a way as to make the injuries they claim to have suffered more pronounced than currently alleged." *Id.* In the absence of past injury and any separate argument as to why future injury might arise, the plaintiffs were not entitled to prospective injunctive relief under Section 16. *See id.*

Other courts have relied on the same logic under similar circumstances. As the D.C. Circuit has explained, when the challenged anticompetitive practices "have been in existence long enough for their potential effects . . . to manifest themselves," the difference between the standard under the Clayton Act for proving injury for purposes of damages and for obtaining injunctive relief "is not so consequential." *Merit Motors, Inc.* v. *Chrysler Corp.*, 569 F.2d 666, 670 n.14 (D.C. Cir. 1977). As another court has said, "[i]n those cases, a plaintiff's failure to demonstrate actual injury has the effect of precluding the possibility of establishing a threat of future injury from the same conduct." *Drug Mart Pharmacy Corp.* v. *American Home Products Corp.*, Civ. No. 93-5148, 2007 WL 4526618, at *10 (E.D.N.Y. Dec. 20, 2007); *accord Ashley Meadows Farm, Inc.* v. *American Horse Shows Association, Inc.*, 617 F. Supp. 1058, 1063-1064 (S.D.N.Y. 1985).

The principle established by those cases appears to apply to the facts here. In this case, the class period spanned 12 years, from 2011 to 2023. *See* 3-ER-332. That is likely more than sufficient time for any harmful effects of defendants' challenged practices to have manifested themselves. Plaintiffs had an opportunity to prove injury stemming from more than a decade of the challenged practices at trial and were unable to present sufficient evidence to do so. And as plaintiffs' objection to defendants' proposed judgment makes

11

clear, plaintiffs' request for injunctive relief was based on defendants' "ongoing" conduct. *See* 2-ER-30. Plaintiffs have not made any argument that "future conditions will change in such a way as to make the injuries they claim to have suffered more pronounced than currently alleged." *Cash & Henderson Drugs*, 799 F.3d at 215; *see* Br. of Appellants 73-75. Plaintiffs thus appear unable to show a "reasonable probability of future injury" in light of their failure of proof of past injury. *Cash & Henderson Drugs*, 799 F.3d at 215.

### C. Allowing Private Plaintiffs To Obtain Prospective Injunctive Relief Without Proof Of Injury Would Interfere With Public Antitrust Enforcement

Permitting private plaintiffs to obtain far-reaching injunctions without cognizable antitrust injury would displace the role of public antitrust enforcers as the primary protectors of the public's interest in promoting competition. As already explained, *see* p. 3, the government does not need to demonstrate injury in order to obtain an antitrust injunction. *See American Stores*, 495 U.S. at 295; *FTC* v. *University Health, Inc.*, 938 F.2d 1206, 1218 (11th Cir. 1991); *see also Report of the American Bar Association Section of Antitrust Law Special Committee to Study the Role of the Federal Trade Commission*, 58 Antitrust L.J. 43, 62 (1990). The two federal antitrust agencies have prophylactic injunctive powers because they have been entrusted with the special responsibility of safeguarding the public interest in competition. *See, e.g., Borden*, 347 U.S. at 518-519.

12

Not so with private plaintiffs, who may be motivated only by their own interests. Indeed, in several notable examples, private plaintiffs have sought equitable remedies that were incongruent with the relief the government obtained by consent decree. Those examples demonstrate the real potential for divergence between federal antitrust policy pursued by federal antitrust enforcers, on the one hand, and private interests, on the other.

For example, in the seminal case of *Broadcast Music, Inc.* v. *Columbia Broadcasting System, Inc.*, 441 U.S. 1 (1979), plaintiff CBS sought prospective injunctive relief against two groups that negotiated copyright licenses for music on behalf of publishing companies, authors, and composers. *See id.* at 6. The requested injunction would have required those groups either to license their musical repertoires at standard per-use rates or to stop "issu[ing] any blanket license" or "negotiat[ing] any fee except on behalf of an individual member for the use of his own copyrighted work or works." *Id.* at 18. Previously, however, the Department of Justice had obtained a consent decree that "imposed tight restrictions" on one of the group's ability to license works on behalf of its members. *Id.* at 10-11. The Supreme Court reasoned that the injunction sought by CBS would upset the regulatory structure established by the consent decree and explained that the court of appeals should have taken the consent decree into account when assessing CBS's claim. *Id.* at 13-14.

In *United States* v. *Microsoft, Inc.*, 253 F.3d 34 (D.C. Cir. 2001)—one of the most important monopolization cases in many decades—the district court entered a consent decree negotiated by the Department of Justice. Shortly afterward, Sun Microsystems, a private litigant who opposed the consent decree, filed its own suit against Microsoft, pursuing a separate, more aggressive injunctive remedy. *See In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 522 (4th Cir. 2003); Sun Microsystems, Inc., *Comments to the Revised Proposed Final Judgment in 'United States' v. 'Microsoft Corporation,' No. 98-1232; 'State of New York, et al.' v. 'Microsoft Corporation,' No. 98-1233* (Jan. 28, 2002) <tinyurl.com/suntunneyact>. The Fourth Circuit ultimately rejected the claim, but Sun Microsystems' private interest in a broader injunctive remedy was plainly at odds with the federal policy expressed in the *Microsoft* consent decree.

A similar example is *Intergraph Corp.* v. *Intel Corp.*, 195 F.3d 1346 (Fed. Cir. 1999). There, a manufacturer of computer-graphics workstations obtained an antitrust injunction requiring Intel to provide the manufacturer with substantial cooperation, including setting aside a supply of computer chips and providing significant technical data and support. *Id.* at 1350. The Federal Circuit reversed the injunction, finding that Intel had not violated the antitrust laws. *See generally id.* at 1355-1367. The FTC later brought its own monopolization claims against Intel and obtained a set of injunctive remedies through

a consent decree that differed significantly from the relief the private plaintiff had sought. *Compare id.* at 1350 *with* Federal Trade Commission, Press Release: *FTC Settles Charges of Anticompetitive Conduct Against Intel* (Aug. 4, 2010) <tinyurl.com/ftcintel>. Once again, the private plaintiff pursued remedies in its private interest; the government pursued different remedies in the public interest.

Private parties also often oppose consent decrees obtained by the Department of Justice, and the Tunney Act has a provision permitting private parties to raise their objections through public comment. 15 U.S.C. § 16(b); *see, e.g.*, U.S. Reply to COMPTEL Opp. to Mot. for Entry of Judgment, *United States* v. *SBC Communications, Inc.*, Civ. No. 05-2102 (D.D.C.) <tinyurl.com/compteltunneyreply>; U.S. Response to Public Comment on Proposed Final Judgment, *United States* v. *Cortland Management, LLC*, Civ. No. 24-710 (M.D.N.C.) <tinyurl.com/cortlandtunneyresponse>; 88 Fed. Reg. 34,518-34,522 (May 30, 2023). The ability of private parties to comment publicly on potential remedies sought by the government further illustrates Congress's recognition that private interests and the public interest often diverge.

To be sure, the federal antitrust agencies have not sought any remedy in this case. But the fact of non-enforcement is itself significant. Notably, in 1951, before the enactment of the Sports Broadcasting Act, the Department

of Justice did bring an action challenging the enforcement of the NFL's restrictions on broadcasting out-of-market games. *See In re NFL's Sunday Ticket Antitrust Litigation*, 933 F.3d 1136, 1145 (9th Cir. 2019). The decision not to challenge a particular commercial arrangement as anticompetitive is itself a policy decision, which can—like all agency decisionmaking—"involve[] a complicated balancing of a number of factors which are peculiarly within" the agency's "expertise," including an "assessment" of "whether a violation has occurred." *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985).

Whether or not the remedy sought in a private antitrust action directly conflicts with the government's enforcement policies and priorities, removing the injury requirement for private parties seeking an injunction would effectively place private parties in the shoes of federal antitrust enforcers. A private party would be able to seek to enjoin particular conduct that, in its assessment, was anticompetitive, even though the conduct posed no threat of harm to it. But as the examples just discussed illustrate, the judgment of private parties, driven by their own isolated interests, often differs from that of the government. Allowing private parties to seek prospective injunctive relief under Section 16 of the Clayton Act without demonstrating threatened future injury would create a serious risk of interference with the work of federal antitrust enforcers and would thus undermine the statutory scheme Congress enacted.

## CONCLUSION

If the Court affirms the district court's judgment as to plaintiffs' claims for monetary relief, it should also affirm the judgment as to plaintiffs' claims for prospective injunctive relief.

Respectfully submitted,

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM
WILLIAM T. MARKS
MADELINE M. MCMAHON
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
    *2001 K Street, N.W.*
    *Washington, DC 20006*
    *(202) 223-7300*

DANIEL A. CRANE
LOUIS A. MURRAY
KATHLEEN H. PIERRE
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
    *1285 Avenue of the Americas*
    *New York, NY 10019*

JUNE 17, 2025

17

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-5493 & 24-5691

I am the attorney or self-represented party.

**This brief contains** | 3,801 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　　☐ it is a joint brief submitted by separately represented parties.
　　☐ a party or parties are filing a single brief in response to multiple briefs.
　　☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [　　　　].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Kannon K. Shanmugam | **Date** | 6/19/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*